PETITIONER'S OPPOSITION TO:
RESPONDENT'S ORDER TO SHOW CAUSE.

$07-4319$ PJH

**ORIGINAL**

ARGUMENT
I.

WHETHER THE COURT OF APPEAL'S DECISION IS
AN "UNREASONABLE APPLICATION" OF THE
"ONGOING EMERGENCY" STANDARD SET FORTH IN
DAVIS .V WASHINGTON (2006) 547 U.S___ [126 S. Ct.
2266, 165 L. Ed 2d 224]) (DAVIS).

**FILED**

SEP 1 2 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ARGUMENT
II.

APPELLANT'S RIGHT TO CONFRONTATION WAS VIOLATED
BY THE INTRODUCTION OF THE GUILTY PLEAS OF
CO-DEFENDANTS SILLER AND HERRERA FOR PURPOSES OF
ESTABLISHING THE GANG ENHANCEMENTS.

**ARGUMENT**
**I.**

In respondent's memo. of P's and A's pg.19...argument 1(A.INTRO-DUCTION.)Respondent contends that The California Court of Appeals determination that "some of Guray's statements-for example, that her car key's had been stolen when three persons she knew as Cootie,Travieso and Jesse came into an apartment nearby and robbed her and her two friends-must be considered nontestimonial" -The words [H]ad [B]een only indicates past tense.As well the rest of Guray's statements to Officer Hicks ,consistantly shows the  description of past events.[T]hus the record as a whole-reflects no "ongoing emergency".In fact,the encounterment between Officer Hick's and Guray,"objectively indicates there is no such ongoing emergency".Therefore the application of "The ongoing emergency" was unreasonable and violated my Sixth Amendment Right to Confrontation,under **DAVIS V. WASHINGTON(2006)547 U.S-[126 S. Ct. 2266,165 L. Ed 2d 224]**

> "  Statements are nontestimonial when made in the
> course of police interrogations under circumstances
> objectively indicating that the primary purpose
> of the interrogationis to enable police assistance
> to meet an ongoing emergency.They are testimonial
> when the circumstances objectively indicate that
> there is no such ongoing emergency,and that the
> primary purpose of the interrogation is to establish
> or prove past events potentially relevant to later
> criminal prosecution"...
>
> (emphasis added.)
>
> The difference between the interrogation in
> DAVIS and the one in CRAWFORD is apparent on
> the face of things.In DAVIS,McCOTTRY was speaking
> abou...

about events as they were actually happening
,rather than "describing past events" This is
not to say that a conversation which begin as
an interrogation to determine the need for
emergency assistance cannot,as the INDIANA
SUPREME COURT put it"evolve into testimonial
statements", 829 N.E 2d at 457,once that purpose
has been achieved.
(DAVIS,SUPRA,126 S. Ct. at p. 2277.)

Respondent's memo. of P's and A's pg 20: He contends ,that in li-
ght of the record as awhole ,the trial court's decision to admit
Guray's entire statement through the testimony of Officer Hicks
had no "substantial and injurious effect of influence in determ-
ining the jury's verdict".under Brecht V. Abrahamson,507 U.S 619
,637-638(1993).Fry V. Pliler,551 U.S.__ ,127 S. Ct 2321,2328(20-
07).Chapman V. California,386 U.S. 18,24 (1967).

Respondent has incorpriated three case laws (listed above).All
which deal with-"substantial and injurious effect of influence
 in determining the jury's verdict",or "harmless beyond a reaso-
nable doubt."Petitioner has [n]o [d]oubt in mind ,that in fact
if Guray had testified -it would have  had an effect on the out-
come-of the jury determining  personal use of a firearm(as is in
countone and three.) **see CT 238.**

In respondent's memo of P's and A's ,argument 1(B):He stipulates
petitioner did not object to the introduction of Guray's pretri-
al statements to Officer Hicks,on grounds of the Sixth Amendment
Rights of Confrontation and cross-examine.(resp,memo.of P's and
A's pg 20.)This may be true in one sense-that deffendants couns-
el,did not use those actual words "objection",or "VIOLATES SIXTH
AMENDMENT RIGHT TO CONFRONTATION"....but the record does reflect

1   deffendants counsel's "objection",by his(Mr.Squaglia:deffendants
2   counsel.)arguments regarding these issues.("UNAVAILABILITY/SPONT-
3   ANEOUS") statements;defendants counsel made clear arguments in
4   regards to the "unavailability" of Guray RT 688-689.(see petitio-
5   ner's closing argument.)As for the "spontaneous"statements RT 70-
6   5-710.Respondent also uses the fact ,that Officer Hicks's testim-
7   ony,on how long he workedfor San Jose Police Department-gave [s]-
8   upport and foundation to the admissibility of Guray's statements
9   ,despite the fact he never stated for the record -if he had any
10  hearsay expertise.The fact that he has been a police officer for
11  so long(with out knowing his hearsay expertise)is only a favorab-
12  le situation for prosecution.
13  The fact that Officer Hicks stated,Guray [w]alked up to his pass-
14  enger side window-indicates that he (Officer Hicks)[s]een,[o]bse-
15  rved  her (Guray)coming before she knocked-"she's not running".
16  Officer Hicks also testified during trial ,that after Guray appr-
17  ached his vehicle,she waited for him to make eye contact with her
18  ,RT 784-785.This is the point where Officer Hicks made out her
19  appearance"worried,fearful,"and"hesitant",yet Officer Hicks was
20  only compelled to "[R]oll" down his window.Officer Kicks must ha-
21  ve made a distinction -if his situation was a threat,to him or
22  the public.

23          This is not to say that a conversation which begins
24          as an interrogation to determine the need for
25          emergency assistance cannot,as the Indiana Supreme
26          Court put it "evolve into testimonial statements".
27          829 N.E. 2d,at p,457,once that purpose has been
28          achieved.   (DAVIS,SUPRA 126 S Ct. at p.2277.)

1   (emphasis added...)

2   There is  so much indication that Officer Hicks  acted as if-

3   this situation had been  processed consciensely-as he noticed a

4   lone woman walking up to his car.

5           This presents no great problem.Just as, for Fith

6           Amendment purposes,"police officers can and will

7           distinguish almost instinctively between questions

8           necessary to secure their own safety or the safety

            of the publicand questions designed solely to elicit

9           testimonial evidence from suspect,"**NEW YORK V. QUARLES**

10          **467 U.S.649,658-659,104 S. Ct 2626,81 L. Ed.2d 550(1984)**

11          trial courts will recognize the point at which,

            for Sixth Amendment purposes,statements in response

12          to interrogations become testimonial. Through in

13          limine procedure,they should redact or exclude the

14          portions that have become testimonial,as they do

            ,for example, with unduly prejudicial portions of

15          otherwise admissible evidence.

16          (Davis ,Supra,126S. Ct. at p.2277.)

17  Respondent continuiously goes over-"Guray's look"-that Officer

18  Hicks describes(resp,memo.of P's and A's,pg21.)Officer Hicks also

19   stated ,that Guray appeared to be drinking ,and"she looked liked

20  she [h]ad [b]een crying" in fact ,"she [wasn't] crying"at the

21  time.RT 701-702. Officer Hicks also stated-Guray proceeded to

22  talk to him,and describe an incident that took placr [e]arlier.

23  RT 695.It is obvious that from the ,initial contact between Guray

24  and OfficerHicks-there was never  any indication that an ongoing

25  emergency was ever precieved.Even as Guray and Officer Hicks pr-

26   oceeded to the crime scene- there is clearly no indication of a

27  thought.**REPORTER"S TRANSCRIPTS AS FOLLOWS:**    (695)

28  **prosecution:**Did She take you back totake a look at this residence

(4)

1  ?

2  **Officer Hicks:**yes.

3  **Prosecution:**Did you see anything in the residence that would in-

4  dicate that there [h]ad [b]een some kind of altercation there

5  [e]arlier?

6  **Officer Hicks:**yes.

7  Officer Hicks then began to take [n]otes on the particular deta-

8  ils,then wrote a report RT700. It is clear that Officer Hicks wa-

9  s never interupted with a thought of having to secure himself or

10  Guray.However,the fact he took notes,indicates that the intent

11  was for further prosecution.In respondent's memo.of P's and A's

12  pg 21,22,Guray's statements:About the incident that took place

13  [e]arlier,she describes what happened,who did it,how she was th-

14  reatened,and what she did after it was over-the confusing and qu-

15  estionable fact here is,Guray's statement-"she was [f]earing her

16  [c]ar being stolen",which is why she waited after the incident

17  took place.This clearly indicates that Gurays safety was of no

18  concern to herself,but rather she was only "worried" about her

19  car.Guray sat nearly three hours before contacting Officer Hicks

20  ,despite having more than enough opportunities to get immediate

21  help after the incident occured RT 797-798.Guray had several opp-

22  ortunities to "cry" for help.Lopez's testimony indicates that wi-

23  thin a minute ,or two after the incident,he picked up Reinthaler

24  and they both left around the corner to use the phone at a frien-

25  ds house RT 665.Guray stayed at the house.As Guray sat,she made

26  no attempts-until three hours.She was only compelled to tell so-

27  meone,when it was conveinient to her-when she saw Officer Hicks

28  right outside.Even then Guray waited till she  seen  that

1  (Hicks)was done with his prior incident.

2  In DAVIS,SUPRA,after the 911 emergency call,the arriving officer'

3  s on the scene found McCottry in a frantic manner,trying to gath-

4  er her belongings,in a hurry to leave.The courts did not allow

5  any hearsay testimony from the arriving officers,although they

6  did testify ,but it was only to what they observed ,when they ar-

7  rived to the scene.

8  (emphasis added)

9  At no point of time was there any indication of an ongoing emerg-

10  ency,from the first moment of contact between Guray and Officer

11  Hicks,all the way to the crime scene -even after the assesment of

12  the residence.All the meanwhile,Officer Hicks began to elicit and

13  take the particular details,of Guray's statements that were clea-

14  rly "testimonial".

15          Statements taken by police officers in thecourse
           of interrogation are "testimonial" and subject to
16         the Confrontation Clause,when the circumstances
           objectively indicate that there is no ongoing
17         emergency,and that the primary purpose of the
           interrogation is to establish or prove past events
18         potentially relevant to later criminal prosecution.

19                    **U.S.C.A. CONST.AMEND. 6.**

20  In respondent's memo.of P's and A's pg 24,he cites The California

21  Court of Appeal's Opinion "the determination of the Crawford iss-

22  ue"...,that the state apellate court found "[s]ome" portion of

23  Guray's statements to Officer Hicks nontestimonial.On the same

24  page respondent states :his conclusion does not require reversal

25  of defendants conviction,because they are convinced,the admissib-

26  ility of the entire statement was harmless beyond a reasonable

27  doubt,(Chapman V. California (1967) 386 U.S. 18.)Respondent then

28  goes on to ,draw his own conclusion to "what must have happened".

                              (6)

1  However,the only corroborative testimony given by either of the

2  witnesses is:They all had been drinking,and smoking marijuana,

3  and something bad happened to them.All the details given by Lop-

4  ez,and Reinthaler about this incident "[a]re [b]lurr"...In fact

5  Lopez's testimony is conflicting to Reinthaler's,on:who's the one

6  with the gun?...

7  Guray's testimony to Officer Hicks ,would have had an effect,had

8  she [b]een [c]onfronted.Guray stated in Officer Hicks's report,

9  that defendant herrera "Cootie" was the one with a semi-automatic

10  silver pistol,and that he pointed it at Lopez.Then she ran to

11  the bathroom and locked the door,then defendant Zuniga(petitione-

12  r)kicked down the door and robbed her for her purse,and car keys

13  RT¯788-789.Lopez's testimony:he states that defendant Zuniga (p-

14  etitioner) was the first one inside ,and he did not have a gun,

15  and the second intruder,Siller "Travieso" is the one who had a

16  gun.Lopez also stated that the first intruder went into the bat-

17  hroom "one went into the bathroom",one held a gun on him,and the

18  third stood by the front door,acting  as look out CT 9-14. Lopez

19  made a positive identification in trial RT 561-562.Although Lopez

20  does testify ,that two defendants-Zuniga(petitioner)and Siller

21  "Travieso"-approached the bathroom door,and both went into bath-

22  room CT 15.At first Lopez stated he could not see who went into

23  the bathroom first,but that Zuniga (petitioner) kicked down the

24  bathroom door Ct 15. Then on cross-examine:Lopez stated that he

25  did not actually see anyone kick down the bathroom door,but only

26  seen it after the incident,and heard it RT 16-23.Lopez also sta-

27  ted that the marijuana he smoked had worn off,but his mind and

28  mouth were going a million miles an hour CT 30 31.Lopez states

(7)

1   he does not smoke marijuana often,but yet he has been using it
2   for five years,and it does not alter his preception CT 38.Lopez
3   's testimony had many inconsistancies regardin the description
4   of the gun. Lopez's testimony reflects that the third suspect
5   was defendant Herrera "Cootie",and that he stood by the front
6   door as a look out the whole time.Reinthaler's testimony:she st-
7   ates;her and Lopez had smoked a gram of marijuana,and that it
8   was dark in the house RT 1019-1022. She stated,when she read a
9   police report of this incident,she made an attempt to contact a
10  detective,because some of the information she gave may be inco-
11  rrect,and she wanted to set the record straight ,because she di-
12  d not want somebody to get in trouble for something that might
13  not be true RT 1168.When Reinthaler gave testimony regarding
14  the first intruder and if he had a gun ,she seemed unsure of he-
15  rself RT 990.Reinthaler also stated that when she did look up
16  ,after she was pushed to the kitchen floor,she seen two of the
17  intruders over Lopez,and one of them had his hand in the air,
18  like he had a gun pointed at Lopez,while someone was in the bat-
19  hroom with Guray,and she was screaming RT 997.(emphisis added)
20  The testimony given by both,Lopez and Reinthaler is [s]o [b]lu-
21  rr to the specific facts of this case.There is no way to deter-
22  mine,let alone consider,draw a conclusion,or think that they co-
23  rroborate with eachother;other than,they were under the influe-
24  nce of marijuana,had drank alchohol,in a dark house.As the inci-
25  dent was going on,Lopez's mind and mouth was going too fast,to
26  be considered reliable.As for Reinthaler,in the same state of
27  mind,even if she was reliable-her position in the house gives
28  no  testimony to ,what went on in the bathroom with Guray,other

(8)

1 than what she heard..Reinthaler is not only unreliable,but untru-
2 stworthy!..Reinthaler's /Lopez's testimony is farmore confusing
3 and conflicting,than it is corroborative,and must not be conside-
4 red for the truth.However,Guray is the sole declarant,her testim-
5 ony was vital for the defendant.Had she been confronted on cross-
6 examination,her facts alone,are the only conclusion of the truth-
7 what really went on in the bathroom.The legal flaw with The Court
8 of Appeals analysis(see resp,memo of P's and A's pg24)is that it
9 focuses on the purpose of Officer Hicks and Guray rather than on
10 the nature  of the statement itself.DAVIS makes it crystal clear
11 that the testimonial nature of the statement is entirely indepen-
12 dent of the subjective opinion of the parties.It is the objective
13 nature  of the statement and not the purpose of the witnesses th-
14 at is relevant.

15         While prosecutors may hope that inculpatory
   "nontestimonial" evidence is gathered,this is
16         essentially beyond police control.Their saying
   that an emergency exist cannot make it be so.
17         The Confrontation Clause in no way governs police
   conduct,because it is the trial use of,not the
18         investigatory collction of,ex parte testimonial
   statements which offends that provision.But neither
19         can police conduct govern the Confrontation
   Clause;testimonial statements are what they are.
20       (Davis ,Supra,126 S .Ct. at p. 2279.)

21

22  It is undis puted that all the facts that the Court relies on
23 such as the fact that Guray's keys were stolen actually happened
24 in the past and not while she was talking to Hicks.Officer Hicks
25 described his interaction with Guray twice during trial(Hicks did
26 not testify at the preliminary hearing. CT 1-113.).During each
27 description,he testified that Guray described events that occured
28 earlier in the evening,i.e events that occured in the past.

1  In respondents memo,of P's and A's pg 25 "The Nature Of the Inqu-
2  iry",he suggests that,even though petitioner  and his confedera-
3  tes had departed the crime scene ,at least some of that informat-
4  ion was given under circumstances which objectively indicated th-
5  at the primary purpose was to enable the police to assist her in
6  an ongoing emergency.How respondent makes this conclusion,"I do-
7  n't know".However ,respondent does imply that because ,it was 1:-
8  46 am Christmas morning in a residential area-"not a time or pla-
9  ce where one would likely seek out a police officer for the purp-
10 ose of simply offering up a witness statement of past events with
11 a view toward later criminal prosecution"-To assume what type of
12 residential area,how,what ,,and when does witnesses make stateme-
13 nts,in this residential area,is simply not my arguement with no
14 facts of data,who can argue such..However,the fact that it was
15 so late ,or early on Christmas,it would only help Officer Hicks
16 make a qiucker and percise distinction-whether public safety is
17 in need,or someone was in immediate danger.Officer Hicks did in
18 fact testify-"Guray had a look on her face,like she [h]ad been
19 crying,infact [s]he [w]as [n]ot crying"...Officer Hicks also sta-
20 ted-when she first walked up to the passenger side window,she wa-
21 ited for him to make eye contact,however Officer Hicks only [r]o-
22 lled down his window to speak with Guray.Officer Hicks also stat-
23 ed he had [b]een in the area dealing with a prior incident,just
24 on the corner of Guray's incident (the crime scene)given this fa-
25 ct along with it being 1:46a.m,Officer Hicks was able to determi-
26 ne-any traffic,distinguish any other subjects ,parties,or suspec-
27 ts in the general area-Officer Hicks never stated he heard any
28 crashes,screams ,loud noises,or any comotion at that.The fact Of-

1   ficer Hicks did not seek out Guray,nor was he responding to a
2   disturbance call,only indicates Guray's purpose was to simply
3   bear testimony to a crime which happened [e]arlier in the eveni-
4   ng.In fact Reinthaler's testimony,clearly shows Guray had bias
5   feelings for defendant Zuniga(petitioner).
6   In respondent's,memo of P's and A's pg 29,he suggest to not con-
7   sider the passage of time between  the incident and Guray's stat-
8   ement to Officer Hicks,that the exchange between Guray and Offi-
9   cer Hicks ,was not simply a recounting  of past events,and Offi-
10  cer Hicks did not spend a great deal of time with Guray. To the
11  contrary,After Officer Hicks was in the general area-infact rig
12  ht on the corner of the crime scene-tending to a routine incide-
13  nt,Officer Hicks never heard any loud noises ,banging,or cars
14   speeding in this residential area.Furthermore,the records refl-
15  ect that-Officer Hicks treated Guray as a witness.Officer Hicks
16  clearly indicated,that Guray was never in a frantic state of mi-
17  nd,nor was she in a hurry to leave,thus  it is clearly contrary
18  too  [a]ll the indications in Davis V. Washington,in Davis McCo-
19  ttry was talking to the opporator as the incident was "Actually
20  Happening",then the arriving officers  [a]ctually observed McCo-
21  ttry frantic,in a hurry to leave trying to gather her stuff and
22  children.This case also shows that Officer Hicks proceeded with
23  Guray to the crime scene,and spent a [w]hole hour taking Guray's
24  statement,[taking] [notes]on particular details,Officer Hicks
25  also stated that he went over Guray's statement three times bec-
26  ause thats what he usually does with [w]itnesses.The fact that
27  Officer Hicks had been in the area for some time,and not hearing
28  noises,and walked [w]ith the witness to the place where the cri-

(11)

1  me [h]ad happened,all the mean while taking particular notes onl-
2  y indicates-that Officer Hicks already established there was no
3  ongoing emergency,or if there was going to be "any encounterment
4  with a violent felon.It  is easy to say that,Officer Hicks reac-
5  tion to Guray's initial contact,all the way too the place where
6  the crime had taken place,was opposite too Davis V. supra,Officer
7  Hicks's reactions towards Guray were unlike the operator,and arr-
8  iving officers in the Davis case.

> "The Confrontation Clause...applies to'witnesses'
> against the accused--in other words,those who
> 'bear testimony'."Only "testimonial statements"
> cause a declarant to be a witness.The Court is
> unaware of any early American case invoking the
> Confrontation Clause or the common-law right to
> confrontation that dod not involve testimony as
> thus defined. (126 S. Ct.2266,Davis V. Washington,
> (U.S.Wash.2006) ).

15  This case today is more like the Crawford case,however in Davis
16  it is clear too,"The reasonable application of a spontaneous sta-
17  tement,for the ongoing emergency".In Davis McCottry called 911
18  and the phone hung-up.The 911 operator immediately called back
19  and McCottry proceeded to describe the events as they were [a]ct-
20  ually [h]appening.The operator began to ask questions,the form of
21  the operators questions are easy and clear to see,they help dete-
22  rmine what type of environment the responding officers are arriv-
23  ing to.In Davis the biggest fact was "the 911 emergency call",and
24  was it testimonial-in this case before the court today is easier
25  to determine-Guray never made any attempt to cry for help.IN
26  Davis  it was clear in one sense the statements were testimonial
27  however,the clear circumstances made all the statements nontesti-
28  monial,because McCottry was being hit by the assailant as the op-

1  erator took the answer to the questions he/she was asking to de-
2  termine the situation officer's would arrive to.It is clear tho-
3  se same circumstances,do not apply nor do they exist.There is
4  absolutely no evidence in the record to indicate that either Gu-
5  ray or Officer Hicks thought that there might be an ongoing eme-
6  rgency when she approached the protective presence of Hicks and
7  Kurz.Ther is no evidence that Hicks asked Guray any questions
8  designed to determine whether there was an ongoing emergency.th-
9  ere is absolutely no evidence that Guray told Hicks that her car
10 keys were stolen and that she was watching her car to protect
11 when she first approached Hicks.There was no evidence that Gur-
12 ay was describing "events as they were actually happening,rathe-
13 rthan"describing past events,"....(Davis,Supra,126 S. Ct. at p.
14 2276.)

15 Guray was not informing Hicks of those events as they were ha-
16 ppening.At most,the only non-testimonial aspect of her stateme-
17 nt might have been that she was watching her car.But even an
18 explanation of why she was watching her car was the report of
19 a past event and therefore testimonial.

20 The only reasonable infrence that can be derived from this rec-
21 ord is exactly opposite of the inference derived by the Court
22 of Appeal.The only reasonable inference is that no one thought
23 that there was an ongoing emergency and that the sole purpose
24 was to report an incident that took place entirely in the past.

25     But in cases like this one ,where Guray's statements
26     were neither a cry for help nor the provision of
       information enabling officers immediately to end a
27     threatening situation,the fact that they were given
       at an alleged crime scene and were"initial inquiries"
28     is immaterial.
       (Davis,Supra,126 S. Ct. at p. 2279.)(Emphasis added.)

(13)

1  Appellant respectfully submits that the Court of Appeal's contr-
2  ary conclusion is''''... a decision that was contrary to,or in-
3  volved an unreasonable application of clearly established Feder-
4  al law,as determined by the Supreme Court of the United States
5  [and is]based on an unreasonable determination of the facts in
6  light of the evidence presented in the State court proceeding as
7  to any claim adjudicated on the merits in State court proceeding-
8  s."(28 U.S.C. § 2254  (d);Williams V. Taylor(2000)529 U.S. 362,
9  376[120 S. Ct. 1495,1504,146 L.Ed.2d 389].)
10  Accordingly,this Court should grant this petition and order that
11  petitioner be granted a new trial that correctly applies the
12  United  States Supreme Court precedents in Davis,supra,and Craw-
13  ford,supra.As Crawford itself makes it clear that harmlessness
14  determinations by appellate courts based on vague standards of
15  their own devise are not a sufficient guarantee of the constitu-
16  tional right to confrontation.

17          We readily concede that we could resolve this
          case by simply reweighing the"reliability factors"
18          under Roberts and finding that Sylvia Crawford's
          statement falls short....Moreover,to reverse the
19          Washington Supreme Court's decision after conducting
          our own reliability analysis would perpetuate,not
20          avoid,what the Sixth Amendment condems.The Constitu-
          tion prescribes a procedure for determining the
21          reliability of testimony in criminal trials
          [confrontation],and we,no less than the state courts
22          lack authority to replace it with one of our own
          devising.(Crawford,supra,541 U.S. at pp.67-68.)
23

24  Respondent's memo.of P's and A's-as does the State Court of App-
25  eals-has supplied its view of what "must" have happened.Petitio-
26  ner respectfully asks ,and wishes ,this Court objects such a vie-
27  w 

28

ARGUMENT
II.

Petitioner re-submits the points and authorities in the original petition filed on:08-7-07.

The trial court was aware of the prejudice,the co-defendants guilty pleas had(see RT 720)The record also clearly shows the district attorney's intent ,for the guilty pleas to come in RT 711-714.District attorney made clear arguments to use the guilty pleas as declarations against petitioner,and show that petitioner had to be guilty RT 711-714.The fact the trial court denied the use of the guilty pleas,then suddenly changed it's mind,and allowed the guilty pleas in as a predicate -is only a "courtroom trick".The districtattorney stated he had more than enough predicate acts to present(12 or 15)but had no problem with limiting it to five predicates  RT 64.This clearly indicates that the district attorney  could have used a number of different predicates ,however too use the guilty pleas as a predicate in which petitioner was still on trial for those charges,that the co-defendants pleaded guilty to is unfair and prejudice.The trial court records shows [c]umalative [p]rejudice against petitioner throughout the trial. Heres how: 1)The trial court indicated that no gang related evidence will be allowed until the bi-furcated hearing-when in fact the district attorney made many inferences towards gang related prejudices throughout the trial.

2)All the gang related indicia presented as evidence at trial was evidence found at co-defendant Siller's house.Petitioner was not arrested at co-defendants house,nor was any of the gang rel-

(15)

1  ated indicia found,conected to the petitioner.

2  3)The attornies for co-defendants Siller and Herrera,made  remar-

3  ks and inferences-suggesting guilt towards petitioner.

4  Attornet for Herrera(MR JACHIMOWICZ) showed a pattern of questio-

5  ns which implicated  petitioner(ZUNIGA) as aguilty party RT 646-

6  649.      Attorney for Siller (MRS BROWN)also formed questions im-

7  plicating petitioner RT 652.Both attorney's for co-defendants

8  (SILLER and HERRERA)made incriminating and prejudicial inferences

9  suggesting petitioner as  the guilty person during the opening

10  statements RT544-550.The fact that the trial court gave  a mini-

11  al instruction does not mean  it gave any remedy on the prejudi-

12  cial weight the guilty verdicts had.

13  The district attorney also made many inferences ,to suggest that

14  co-defendants acted in these crimes with petitioner-in district

15  attorney's opening and closing statements.It is real clear-that

16  district attorney wanted to use the guilty verdicts as declarat-

17  ions against petitioner,which is why he stated the following:

18  "First of all,you have peoples 37 and 38.That is the convictions

19  for Siller and Herrera  where they admitted that this case was

20  for the benefit of the gang because they admitted the 186.22

21  enhancement,which we are now asking you to find true for the de-

22  fendant.That alone is sufficient" RT 1349.This statement is pre-

23  judicial and damaging to the defendant-as well ,such a statement

24  cannot be cured,other than protecting the constitution,and  Wha-

25  t it prescribes in criminal trials,The SIXTH AMENDMENT CONFRONT_

26  ATION CLAUSE APPLIED,to the co-defendants guilty pleas.CO-defen-

27  dants Siller and Herrera began trial with defendant/petitioner,

28  then on JULY 14,2003,in a hearing out of the presence of petiti-

1  oner/defendant-both co-defendants Siller and Herrera plead guilty
2  to the offenses ,in which Petitioner/defendant still was on tri-
3  al for.The fact that both co-defendants began trial with petiti-
4  oner/defendant-then suddenly was not in trial ,would only raise
5  eyebraws too the jury.The district attorney knew exactly what he
6  was doing when,he made prejudicial statements to the jury,about
7  the co-defendants guilty pleas being all he needed  to prove the
8  gang enhancements for petitioner/defendant Zuniga.Clearly the
9  district attorney used the guily pleas of both co-defendants,as
10  declarations against petitioner/defendant Zuniga-furthermore it
11  was intentional . The guilty pleas constitutes testimonial evi-
12  dence .The Court of Appeal rejected this argument finding that -
13  the guilty pleas were used for a non-testimonial purpose and be-
14  cause they were used for non-hearsay purpose.(Opinion at p.24)

15  First,the Court of Appeal found that the guilty pleas did not
16  implicate appellant as the third person who invaded the apartme-
17  nt and thus were non-testimonial.(Opinion at p. 24.)However,the
18  gang evidence including  the guilty pleas was not presented unt-
19  il after appellant had already been convicted as the third person-
20  son who invaded the apartment.(11 RT 1271-1277.)The guilty pleas
21  were not offered to establish that appellant was the third pers-
22  on.The evidence was introduced to prove the gang enhancement.
23  Whether the guilty pleas implicated appellant as the third pers-
24  on is simply not relevant to the issue presented on appeal.
25  Moreover,the guilty pleas are plainly testimonial.The Second Fe-
26  deral Circuit is the only circuit to have considered this issue
27  in detail.Numerous Second Circuit cases have concluded that gui-
28  lty pleas by co-defendants are testimonial.(See,UNITED STATES V.

1   BANKS(2nd Cir.2006)464 F.3d 184,189;UNITED STATES V. GOTTI(2nd
2   Cir.2006)459 F.3d 296,341; United States V. McClain(2d Cir.2004)
3   377 F. 3d 219,222;United States V. Snype(2nd Cir.2006)441 F.3d-
4   119,128; United States V. Al-Sadawi(2nd Cir.2005)432 F.3d 419,42-
5   6.)"Aguilty plea cannot and does not exist apart from the state-
6   ment 'I PLEAD GUILTY' or the associated allocution to all of the
7   elements of the crime to which the co-defendant is pleading guil-
8   ty."(United States V. Massino(E.D.N.Y. 2004)319 F.Supp.2nd 295,
9   299.)Had Herrera and Siller's guilty pleas been introduced duri-
10  ng the trial on the substantive offenses,it could be argued that
11  their admissions only implicated themselves.But, the pleas were
12  offered to prove the gang enhancement.A necessary element of th-
13  eir admissions was that Siller and Herrera acted in concert on
14  behalf of gang within the meaning of penal code section 186.22,
15  subd.(b)(4).That provision provides in pertinent part that:

16          Any person who is convicted of a felony enumerated
            in this paragraph committed for the benefit of,at
17          the direction of,or in association with any criminal
            street gang,with the specific intent to promote,further
18          ,or assist in any criminal conduct by gang members
            ,shall, upon conviction of that felony,be sentenced
19          to an indeterminate term of life imprisonment...

20

21  The essence of the gang enhancement allegation is that the accu-
22  sed acted together with fellow gang members.Thus,the guilty plea
23  by the co-defendants was testimonial evidence that they acted
24  together with appellant,because the jury had already found that
25  appellant was the third person. The testimonial accusation that
26  appellant acted in concert with Siller and Herrera is inseparab-
27  le from their guilty pleas.If the guilty pleas established that
28  the home invasion was committed on behalf of a gang by Siller

1 and Herrera,they also necessarily accused appellant of acting in
2 concert with them for the same purpose.Thus, the pleas were cle-
3 arly testimonial evidencethat appellant acted on behalf of a ga-
4 ng and should have been excluded.

5 The Court of Appeal's conclusion-as  respondents-is that the gu-
6 ilty pleas were not introduced for testimonial purpose because
7 they were offered for the purpose of establishing predicate offe-
8 nses and notes that the jury was given a limiting instruction to
9 that effect.(Opinion at p.24)The Court of Appeals does not expl-
10 ain how the jury(or anyone else)could find that Siller and Herr-
11 era had admitted that they acted in concert with appellant,with-
12 out using that admission as evidence that appellant had necess-
13 arily acted in concert with Siller and Herrera.It is highly imp-
14 roper to introduce evidence for a facially proper but irrelevant
15 purpose,in the hope that the jury will consider the evidence for
16 an improper purpose.(United States V. Patterson (7th Cir.1994)
17 23 F.3d 1239,1245.)

18 Moreover,the Court's reliance on the effectiveness of the limit-
19 ing instruction ignores the fact that the prosecutor,an experie-
20 nced criminal attorney,was unableto accurately explain the purp-
21 ose for which the guilty pleas were offered to the jury.(see,12-
22 RT 1349 where the prosecutor told the jury that theguilty pleas
23 were all the jury needed to convict appellant and resorted to
24 circular reasoning to explain what a predicate offense was to the
25 jury at the request of the trial court.)If an experienced prosec-
26 utor cannot correctly explain the purpos for which the evidence
27 was introduced,then the jury cannot be expected to understand and
28 follow the limiting instruction.

(19)

1    The United States Supreme Court has recognized that where

2 confusing and contradictory instructions are given, the

3 reviewing court has no way of knowing how the jury resolved

4 the contradiction.

> 5    Nothing in these specific sentences or in the charge
> as a whole makes clear to the jury that one of these
> 6    contradictory instructions carries more weight than
> the other. Language that merely contradicts and does
> 7    not explain a constitutionally infirm instruction
> will not suffice to absolve the infirmity. A reviewing
> 8    court has no way of knowing which of the two irreconci-
> lable instructions the jurors applied in reaching their
> 9    verdict.
>    (Francis V. Franklin (1985) 471 U.S. 307,322
> 10    [105 S. Ct. 1965; 85 L. Ed.2d 344].)

11 Here the confusion was caused by the contradiction between the

12 prosecutor's arguments ,that were given the imprimatur of legiti-

13 macy by the judge who specifically asked the jury to explain pre-

14 dicate acts,and the limiting instruction.Because of the courts

15 request,the prosecutor's comments were tantamount to additional

16 instructions.There is no way for the reviewing court to determine

17 whether the jury followed the limiting instruction,or the improp-

18 er argument of the prosecutor who had been asked to explain the

19 the legal principles governing predicate acts to the jury.

20 The opinion fails to even address this problem despite clear Uni-

21 ted States Supreme Court authority highlighting the impossibility

22 of finding an error harmless when the instructions are inherently

23 contradictory . Appellant respectfully submits that this court's

24 failure to address this issue results in '''...a decision that

25 was contrary to,or involve an unreasonable application of clearly

26 established Federal Law,as determined by the Supreme Court of the

27 United States....(28 U.S.C.§ 2254 (d);Williams V. Taylor,supra,

28 529 U.S at p.376.)

1 | Accordingly,this Court should reject Respondent's order to show
2 | cause,because it relies on his "own point of view" and bares no
3 | legal authority-other than  respondents own point of view.
4 | Petitioner respectfully asks this court to grant this petition
5 | and order that petitioner be granted a new trial that correctly
6 | applies the United States Supreme Court precedents in Davis,
7 | supra,and Crawford,supra.Petitioner request to proceed in Habe-
8 | as Corpus relief.

Declaration of Service

RE:  I, Jesse Zuniga, Declare that I am over 18 years, of age, and am the acting attorney/petitioner for this case (4c-07-4319-pjh) I served a true copy of the attached:

On each of the following, by placing, same in an envelope (or envelopes) Addressed (respectfully) as follows

Date: _9 *9b 08*

Mark S. Howell

Deputy Attorney general

Attorneys for representing: State Bar no. 95125

San Francisco, CA 94102-3664

Telephone: (415) 743 5969

Fax: 415 703 1234

Clerk Of:

Phyllis K. Hamilton

United States District Judge

U.S. District Court, Northern District of California. 450 Golden Gate Avenue Box 36060

San Francisco, CA 94102


I declare the foregoing is true and correct and that this declaration was executed on   9.8. 08

<u>Jesse Zuniga – V36045</u>
(Name)

(Signature)